Welfa v. Manny P. Concrete Co., Inc. Welfa v. Manny P. Concrete Co., Inc.  Judges of the United States Court of Appeals for the Second Circuit. Hear ye, hear ye, hear ye. All persons having business before this, stay to turn to the United States Court of Appeals for the Second Circuit. Draw near, give your attention, and ye shall hear. God save the United States of America and this honorable court. Please be seated. Good morning, everyone. We have four argued cases this morning, and we have two cases that are on submission. That's United States v. Cepeda and Phipps v. Experian Information Solutions, and we will take those on submission today. The deputy clerk has advised me that counsel is present and ready to go in all four of our cases. So I'm going to dispense with reading the calendar this morning, and I think we're ready to start with our first case, which is Cement and Concrete Workers v. Concrete Company, Manny P. Concrete Company. Good morning, Judge Livingston. Good morning, your honors. All the attorneys here in this room come to this court seeking justice for their client. And in our particular case, justice really calls out to be served here. The facts are relatively straightforward. We have an employer who performed work at a job site and had various individuals, unionized individuals of various unions that were at the job site. 12 of these individuals wound up being on an audit done by plaintiff's funds report. And the auditor believes that these 12 individuals should have contributions made on their behalf by defendant appellant. We submit the audit is wrong. We submit that five individuals should not have been included in the audit. A summary judgment decision was issued, and we submit to you that it requires the no review. The facts are relatively straightforward. The problem is, we don't- You have five individuals from early on, right? I mean, I see this, the interrogatories you responded to in January 2020, you listed the five. That's right. The six who you think should not have been performing covered work. And they were my brief, too. And you put in documentation, but then they sent you these requests for admission and you didn't respond. So why shouldn't that be dispositive? Well, for several reasons. First of all, some of the requests for admits were like legal conclusions. Did you do work in the jurisdiction? Is your work covered work? I mean, those are very general legal questions. How about whether or not- Well, it's not application of law to fact, so it defines covered work. And it says this person performed covered work in July of whatever year, and that person performed covered work. I mean, that's a fact-laden question, isn't it? Well, I would think the better question would have been, and the more- How Alvarez performed 74 hours of covered work for Manny P. in March 2015. So they are asking about month to month, and how many hours, and so on. It seems like a pretty fact-laden question. Well, they didn't ask whether or not it was drainage work, is what these guys did. Drainage work is not covered work under the party's collective bargaining agreement. Well, do you agree that if it is- Do you agree that if it is covered work, then, I mean, that if it is application of law to fact, that you needed to answer their request? Well, the request should have been answered under all circumstances. We concede that. But we also would argue that there is other evidence to show that there are disputed facts here, including our own audit findings and also our affidavit and other documents, which in a way is an answer to the request to its mits and also to the interrogatories. But we would argue that no. So what you're asking is, something that wasn't disputed under Rule 36 when you have the request for admission, you should then get to dispute later under Rule 56. And doesn't that undermine the whole point of having requests for admission? I think- So it's a narrow the issues before you get to Rule 56? I would argue that this case is a little bit more than that. There's really nothing in the findings to show that these people did the work that was covered under the contract, other than what the auditor found. The auditor wasn't on the job site. We have people who were on the job site. Give them their one day in court. It should be a relatively easy hearing to ask the five people, did you do this work or did you do that work? I would argue that what we had here was an attorney who had an ailment. And- No, I know that actually. And so the district court took account of that, right? But so on August 13th, 2020, your new lawyer took over. And the plaintiffs told the new lawyer, here's all the pending discovery requests. So at that point, you could have asked for an extension or to withdraw the lack of admission or something, right? So why didn't you do that for the next year with the new counsel? It was convoluted. You have two defendants that have similar names. It's not easy to take over a case from someone like a prior attorney who suffers the type of ailment that he could come into this room, give you oral argument, and you would never know that he hasn't slept in three days. About the illness and the complication and so on. That would justify maybe withdrawing the default admission or asking for an extension to respond to the request for admission. It seems like that might be good cause, but you didn't do that for a really long time. Well, my brief says that we did ask for a withdrawal. What was that? I don't have it in front of me, but I believe it was done orally to the judge. Give us another chance. One of those types of pleadings that may have occurred. And if that was denied, what's the standard for review? Reversible, is it reversible error? But I think it's very reversible when you have a truckload of other documents to show that, look, we are materiously- Do we review that de novo? Or do we review it for abuse of discretion? The failure to do, the failure to give us a chance to fix the non-admission is reversible error. What are you calling it a non-admission? Well, essentially what they're saying is that we don't answer. We're admitting a fact that we argue in so many other papers is clearly in dispute. The judge went too far, Your Honor, with all due respect. But you're not here appealing the denial of a motion to withdraw the admissions. You're here, you're saying that the district court erred on summary judgment. Absolutely, it did. So your argument is not that the district court should have allowed you to withdraw the admissions. Your argument is that in ruling on summary judgment, the district court should have overlooked the admissions and decided that the record actually reflects a dispute of material fact. Yes, but I was answering- So your argument still requires us to say that you should be excused from failing to respond to the request for admission under Rule 36. Or I could argue to you that the penalty was too severe. There are other penalties you could do for not applying that. There are several cases to that effect. They're cited in our brief. They're not even challenged by my adversary here. And I think the judge went too far. Because if you take all the other evidence that we put in, take into account our attorney. I mean, sorry, Rule 36 says a matter admitted under this rule is conclusively established unless the court permits the admission to be withdrawn or amended. So you're saying instead of treating the admission as conclusively established, the district court should have given you some other kind of punishment? Absolutely, local union number 38, 913 F sub 290, this is a southern district case. The failure to respond in a timely fashion doesn't require the court to automatically deem all matters admitted. We just want our day in court. We'd like you to reverse the decision and give us an opportunity to put these five people on the stand. It shouldn't take more than a day. And frankly, I don't think he's going to challenge them, because I think when the facts come out, I wouldn't be surprised if he concedes that they didn't do the type of work that's covered under the contract. Regardless of what your auditor said, and your auditor wasn't there on the job site. Thank you. Thank you, Judge Lindefend. Good morning. May it please the court, I'm Dennis Lyons, here for the appellees, the Cement and Concrete Workers District Council. So there are two points here before the court. The first is, did the district judge properly rely on the admissions in the Rule 36 statements, or under Rule 36? And the second was, was there any evidence in the record contradicting the audit findings, such that the judge committed an error in awarding summary judgment? As to the first one, Rule 36 admissions can be used in summary judgment. They've also been used in delinquency matters such as this, when the defendant failed to submit responses. The district judge cited Mason Tenors v. McCroice and Berger v. Big Apple, both in the southern district, as examples. As for the- Well, they can be used, but so if we have this kind of fact matter, where before they failed to respond to the admissions, they did in response to an interrogatory say that these six employees did not perform covered work, and they did submit some documents, including payroll records and ledgers and so on, tax records. So the record does reflect a dispute about whether they performed the covered work, right? So why, in that circumstance, should the district court have looked at the actual materials in the record instead of a default admission? First, as the district court and magistrate judge were aware, this is one of a series of non-compliance issues with discovered obligations. They almost were held in contempt. We were awarded sanctions. We were awarded an issue of preclusion for documents not produced up to that point in December of 2020, I believe. So the- We're talking about documents that were produced, right? So of the documents that were produced, there is one set that the appellant repeatedly refers to. They're certified payroll reports. They list all 12 people in the audit report as laborers. He is correct, there are multiple unions that do laborers work in the city. The ERISA 209 requires employers to maintain records sufficient that we can tell the difference. So these certified payroll reports, I've seen many employers indicate what unions these individuals are on. There's space for that on the forms. Appellant didn't do that. But there's also very important omissions or documents that never showed up on the record. For example, he said- Can I just clarify, so does your argument depend on this? So if they had submitted documents that would show that they're not the members of the correct union to require the contributions, does that mean that the district court should have taken account of that on some judgment? Yes, if there were documents in the record that refuted the audit. Okay, so your argument is actually that the default omissions do not trump documents that were actually produced. No, no, that's not my argument at all. It's, as you pointed out originally, it is in the judge's discretion. It could go either way. Meaning, at summary judgment, the district court could have taken account of the omissions or could have looked at the documents? Yes. But if Rule 36 says it's conclusively established, where do you get this idea that the district court has discretion to do one or the other? Well, there are some cases out there where they have overlooked failure to respond to Rule 36 statements. Okay, so if the district court has the discretion to do that, and we were to conclude that we think the documentary evidence creates a question of material fact, could we conclude that under the circumstances it was an abuse of discretion for the district court not to look at the underlying documents as opposed to the default omissions? No, in this case, again, it's within the judge's decision, and the judge had the context. They had two years of problematic issues with discovery, trying to get the appellant to comply with their discovery obligations, and, again, ultimately awarding preclusion. We were trying to set the record. By the time of summary judgment, Manny P. was engaged, right, was opposing summary judgment, was pointing to facts in the record and so on. There had been an earlier period where the attorney had gotten sick and they seemed to have dropped the ball and whatever.  So it's not obvious that by the time of summary judgment it made sense to, as a penalty for noncompliance with discovery, to just award the whole case to the plaintiff. Well, they were also relying on the audit findings as well, because those went unrebutted by any documentary evidence in the record. With their position, they had argued that some of these employees were members of Local 1010, a different labor union. We had asked, well, do you have a collective bargaining agreement with Local 1010? None was produced. Did you get authorization cards from these Local 1010 members to deduct dues from their paychecks and send them to 1010? None were produced. Did you pay benefits to the 1010 funds for the work that you claim were in 1010's jurisdiction? No proof provided in the record. And then this gets us to the burden shifting under Combs, which we've put in our brief. Before you get to Combs, the certified public payroll records, were they submitted before or after the December 18th, 2020 sanctions? Right before. So were these payroll records, along with a page and a half affidavit from the principal appellant, were they sufficient to rebut the audit findings? And under the de facto rule in this circuit, under the Combs burden shifting analysis, the answer is no. The ERISA 209 puts the burden on the employer to maintain the records. As I mentioned before, that could have been these payroll records identifying the union membership of the employees. It also would have had maintaining their collective bargaining agreements and proof of payment to other benefit funds. All which could have been considered by the auditors. But that is not in the record. When you look at the admission, the admission is as to the accuracy of the revised audit. But the revised audit said that 600,000 was owed. Whereas, in fact, the subsequent order knocked it down to 300,000 because there was equipment rental built into it. I'm sorry, I didn't catch that last. Because the third audit report, which is the second amended audit report. The second amended, right. Was based on invoices provided to the auditors under threat of contempt and preclusion. But that audit report was prepared after the waiver, which conceded, as you argue, that the amended audit report was correct. Yes, that is correct. So the court didn't actually apply waiver, pure and simple. Because if the court did, it would have imposed a $600,000 judgment, which everybody agrees would have been erroneous. Yes, and the court did briefly address that. So on the summary judgment, the court did a little bit more than simply apply the waiver. I would also point out we did amend the complaint after that. So our claim was only for the 347,000 plus statutory penalties. So that was all we were ever pleading for. That was all the judge could have awarded at that point in time. So can I ask this question? So as I pointed out, there is this response to interrogatories from January 2020, in which Manny Pease says the audit seeks contributions for the following individuals who did not belong to the plaintiff union and or did not perform bargaining unit work. And it's Alvis, they say, belong to 1010, and Castello-Pereira, the other Pereira, who were all members of 1010, and then Marico and Godinez, who were a driver or a yardsman. So they're contesting that they performed covered work. Then subsequent to this, you do the request for admission, which is about whether Alvis performed 74 hours of covered work in March 2015, Castello performed 80 hours of covered work in March 2015, and so on. Why shouldn't we understand that as Manny Pease contesting whether payments were due for these employees, but then failing to contest the particular hours worked in each month for each of those employees that was reflected in the revised audit? That's a fair reading of it, I believe. They did initially contest it. That's why we started asking for the collective bargaining agreements, proof of payment on these employees' behalf to the other benefit funds, the authorization cards. We pursued this for about a year and a half, never got them. In terms of the way we structured the request for admission— Right, so then my question is, you said it's a fair reading. So then is the district court over-reading the admissions that the district court should have concluded, well, Manny Pease is contesting whether they performed covered work at all, but then failed to respond to a request for admission about the particular number of hours in each month, perhaps because it didn't matter how many hours they performed because their position is they didn't perform covered work at all. Well, the requests for admission were to that level of detail to try and narrow down exactly what hours and what findings were contested. No, I know, but that's what I'm saying is maybe the detail is the notable thing about the request for admission, and so that's the thing that maybe they admitted, but not the fundamental question about whether they performed covered work at all. Well, those were also in the request for admission. So by disregarding those requests, I mean, they disregarded the Rule 36. So this is, again, in the context of a number of discovery failures. We did award sanctions. There was a preclusion order, almost a contempt order. This, in terms of, and also including the health issues that were referenced, this was all on the table. The magistrate judge was very familiar with this. I had more discovery conference calls than I think any other case I've been a part of. Sorry, there was a point that Manny P. did eventually ask to be excused from the failure to respond to the request for admission. When did that occur? The only time I could think of is when it was sort of a throwaway line in their memo of law in opposition to our summary judgment. I don't recall any other request. Okay. Would you want to concede that an admission to something that is impossible, such as that the floor is the ceiling, is not something that would be applied on summary judgment. So there's some element of judgment that always has to be with respect to whether to apply those. I do agree that it's not an automatic rule, and there are some cases that have gone the other way. Is it membership in the union to which it is claimed welfare funds are owed? Isn't that analogous to the floor and the ceiling? If they're not members of the union, how could there work? Whatever it is, possibly. Well, they had the burden of maintaining records to show that, and they never showed up in the record. And that is, unfortunately, I didn't get to address the Combs, but that is the de facto rule here. This is a perfect example of- Doesn't the union know who their members are? Membership is not determinative of liability for contributions. It's whether they were doing work within our jurisdiction. Whether they were members of your union or not. Correct. But that doesn't, I mean, they are arguing that these people are not, I mean, their position is that they didn't qualify for contributions. And so I understand you might say, well, what they've pointed to is not dispositive, but that would be a disputed question of material fact, right? Not enough to overcome the burden once they fail to keep those records. The audit, supported by the declaration of the auditor, was properly conducted under the appropriate standards. Courts in this circuit and around the country have recognized that that shifts the burden to the employer to provide documents rebutting the audit. That was not done here. And just for clarity, before he sat down, Mr. Grimaldi said he didn't think that you would oppose having a hearing with respect to these five individuals. Do you, in fact, oppose? I do oppose. Okay. Thank you very much. Thank you. What I also said, Your Honor, was our evidence will show that these people were doing drainage work. Not just simply they weren't in their union, but were doing work not covered under the contract. I gave him that opportunity to come here and tell me that I'm wrong, and he didn't do it. And I believe there's an injustice here because I believe these workers truly didn't deserve to be covered under this audit. They're not going to get any benefits. It's a windfall for his client. And his reliance on Combs, which is an 11th Circuit case from 1985. I mean, that's, what, 30 years ago? The truth of the matter is there's a lot of cases we cited wherein summary judgment did not have to be awarded here on their side. We brought in, as you pointed out, several discovery documents, affidavits from the chief executive officer to show that these people are not covered and should be excluded. And even you, Judge Jacobs, they went from a $600,000 audit to a $300,000 audit. They literally made such a monumental mistake. There's still more mistake out there. Give us the chance. Give us the opportunity to put our case forward. And frankly, it's really the fair thing to do. I can answer any other questions you may have. Well, Mr. Lyons said that actually the documents in the record were not sufficient to establish that these were not covered employees. Do you agree with that? No, I don't agree with that. First of all, sometimes it's trying to prove a negative. His discovery really didn't go to, what exactly did they do with respect to the, what tools did you use? Who was your supervisor? Did you do drainage work? Union membership is not dispositive? You need union membership and you need covered work. If no union membership, these guys get a windfall. They just pocket the money. Union covered work is probably the most important of all. Because if you're not doing the work that's covered under the collective bargain agreement, you don't have the right to dues and you don't have the right to funds. So we're arguing they have none of that. They have no criteria, nothing. What they have was some admissions that did not get answered. And in opposition to the motion for summary judgment, we did request that, give us a chance to correct that. But more importantly, we put in what I consider to be a lot of evidence, our own audit findings. So you didn't ask for being excused from the failure to respond to the request for admission until discovery had closed and you were at summary judgment? In the context of that, that's true. But you have to understand, we were put in a place where we didn't think it was going to be, lead to what occurred. When we now face the motion for summary judgment, and they were going to use the admissions in that way. After we put in all this other evidence- Why would you not think that would occur? Well, because we already- You just said rule 36 means that it's conclusively established if you don't. Well, there was also a lot of other evidence that we put in. I think there was a misinterpretation because we did eventually put in admissions. There are two defendants here, and I think there was some confusion on the part of the parties as to which one it is. I mean, the names are almost exactly the same, but I would still argue that what we did in opposition to their motion for summary judgment just goes hand in hand with the fact that they are trying to include workers on an audit that should never have been there in the first place. You were saying earlier, this is just a very simple thing, five people testifying. On the other hand, it's a matter, as you also said, what tools they were using, specifically what it is they were doing. And given those particulars, and as you pointed out, the auditor was not at the job site. Why doesn't that heighten the requirement that the employer, your client, maintain records that show these things, rather than have to deal with this in the aftermath of a summary judgment? I guess it's the milieu of doing a job site here in Manhattan. You don't necessarily have sign-in sheets if you're going to an open pit. I don't know why not. I mean, you can have sign-in sheets and go into an office building. By the way, we did give a lot of documents. It's not just we didn't give any documents. If those documents did exist, they would be put in. If I'm short on documentary evidence, Your Honor, I can promise you I won't be short on testimony- How did those documents establish or create an issue of fact as to the workers doing drainage as opposed to masonry work? Well, number one, there was the affidavit from the chief executive. He was certainly there. He counts for something. Find me an affidavit on your side. Is there anything other than the affidavit? I'd have to go through the ones. The separate audit report was certainly put in. That showed who was, who was not. I don't recall anything documentary in particular, Judge Livingston, that goes to your question. Well, there is the interrogatory response that says these people didn't belong to the union and didn't perform bargaining at work. Right, but I thought she was looking for documents. I thought you were looking for a sign-in sheet. Sometimes there's something called the huddle in the early morning, where this group goes with this group, that goes with that group. But these are construction people. I may have misunderstood your response earlier, but I thought you said, setting aside the request for admission, we put in a lot of documents that established that these people were not doing covered work. And I was just asking, what are those documents? And you said an affidavit and- The separate audit, and I rely on my brief. There was payroll records and ledgers and so on. Yes. Would that reflect the work that they were performing? The only thing it reflects off the top of my head is they're listed as laborers. And their fund audit ran with that like a football. Well, if it's a laborer, it's got to be one. They're all the same, but they're not. So I think we do have a little of an issue here that requires testimonial evidence. Yes, Your Honor. Was the project a drainage project? Yes, Your Honor. I'm sorry, what was the question? Was the project a drainage project? It was a combination of mason cement work that his seven people were doing. And then there was drainage, which this other union was doing. You could be building a castle with cement. But was this a drainage project? The drainage project had nothing to do with cement work or anything like that. It was totally different. It's laborer's local 1010, not his local 20. They didn't use the same tools. It's different. Thank you. And we'll take the matter under advisement. Thank you, Your Honor.